## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRIAN RIGGINS**                                    **CIVIL ACTION**

**VERSUS**                                           **NO: 09-143**

**UNITED STATES**                                    **SECTION: "B"**

## ORDER AND REASONS

Before the Court is Brian Riggins's ("Petitioner") motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody (Rec. Doc. 107).[1] The United States ("Government") filed a memorandum in opposition to the petition (Rec. Doc. 111). Petitioner filed a response to Respondent's memorandum in opposition (Rec. Doc. 116). For the reasons enumerated below, the instant §2255 motion is **DENIED.**

## Causes of Action and Facts of the Case

This motion arises out of Petitioner's incarceration at Coleman USP II, in Coleman, Florida. On January 31, 2012, Petitioner was found guilty after a jury trial of five counts of drug and firearm related crimes and sentenced on May 2, 2012 to a term of life in prison.

### A. Criminal Informant's Tips and Initial Investigation

The investigation into Petitioner's drug-related activities began when a trusted confidential informant ("CI") provided Jefferson Parish Sheriff Lieutenant Daniel Jewell with a tip

---

[1] We are grateful for work on this case by Michael Webb, a Tulane University Law School extern with our Chambers.

informing him of the nature of Petitioner's drug-related
activities, and supplied Lt. Jewell with a description of
Petitioner and his vehicle. (Rec. Doc. 87); *United States v.
Riggins*, 524 F. App'x 123, 125 (5th Cir. 2013). Based on the
CI's tip, Lt. Jewell ran a background check on Petitioner that
revealed two prior cocaine-related convictions. *Id.*

The CI later told Lt. Jewell that he and a relative drove
to Petitioner's house. *Id.* Although the house was later
determined to belong to Petitioner's girlfriend, it was where he
actually resided. *Id.* The CI waited in the car while the
relative went inside*. Id.* When he returned to the car, he told
the CI that Petitioner had "bricks" of cocaine in the house.[2] *Id.*

**B. Surveillance and Traffic Stop**

The next day, Lt. Jewell, along with other officers,
surveilled Petitioner's house. *Id.* During this time, a vehicle
matching the CI's description of Petitioner's vehicle arrived at
the residence, and a man matching the CI's description of
Petitioner entered the house. *Id.* Shortly afterward, Lt. Jewell
decided to leave the scene to prepare a search warrant for the
residence. *Id.* Petitioner then left the house alone and began
driving away, and the officers followed him while Lt. Jewell
prepared the search warrant. *Id.* Lt. Jewell ordered the officers
at the scene to stop Petitioner. *Id.* While stopping the vehicle,

---

[2] The record does not state whether the CI specifically indicated the cocaine
was located in the house.

the officers observed Petitioner make movements between his driver's seat and the center console, so they ordered him out of the vehicle and placed him in handcuffs. *Id*. Two officers looked through the driver's side window and observed what they believed to be cocaine between the driver's seat and the center console. *Id*.

The officers asked Petitioner where he resided, and if he was driving from his home. *Id*. He provided a false answer to both questions. *Id*. The officers took Petitioner's keys, and led a drug-sniffing dog around the vehicle. *Id*. The dog indicated the presence of drugs at the driver's side door. *Id*. Lt. Jewell, who was still drafting the search warrant for the residence, then decided to draft a second warrant for the vehicle. *Id*.

Some officers then returned to the house owned by Petitioner's girlfriend in anticipation of issuance of the search warrant. *Id*. at 126. The officers knocked on the door and a 13-year-old girl answered. *Id*. The officers entered and performed a security sweep inside the house. *Id*. Petitioner's girlfriend then arrived at the house and told the officers that Petitioner slept there every night and had a key. *Id*. The officers tested Petitioner's key, and confirmed that it unlocked the door. *Id*. Around this same time, Lt. Jewell went to the scene of the traffic stop with the approved and signed search warrants in hand. *Id*. He presented the vehicle search warrant to

3

Petitioner, and the drug-sniffing dog was allowed into the vehicle. *Id.* The officers recovered cocaine from the area between the driver's seat and the center console, at which point they arrested Petitioner and took him to the detective bureau. *Id.*

### C. Search of Residence and Questioning at Detective Bureau

Lt. Jewell then drove to the residence to execute the remaining search warrant. *Id.* Inside, they found a drug ledger, two digital scales, about nine kilograms of powder cocaine, about $58,000 in cash, two loaded handguns, and two shotguns. *Id.* At the detective bureau, officers read Petitioner his *Miranda* rights and asked if Petitioner wanted to make a statement. *Id.* Petitioner said he did not want to make a recorded statement, but did want to state that everything found in the house belonged to him, not his girlfriend, and that he could not get a well-paying job and did what he had to do to make a living. *Id.*

### D. Procedural History

The record reflects that Petitioner was initially indicted on May 14, 2009 (Rec. Doc. 1), arraigned on August 30, 2010 (Rec. Doc. 12), and detained on this same date. (Rec. Doc. 11). A superseding indictment was filed on December 8, 2011. (Rec. Doc. 39). On January 31, 2012, after a jury trial, Petitioner was found guilty on Counts:

(1) for conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C § 846,

(2) for possession with intent to distribute cocaine hydrochloride and cocaine base ("crack") in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(A),

(3) for possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c),

(4) for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and

(5) for possession of a short-barreled shotgun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(i).

(Rec. Doc. 74). On May 2, 2012, this Court sentenced Petitioner to life imprisonment on each of Counts 1 and 2, 120 months on Count 4 to be served concurrently with the sentences for Counts 1 and 2, 60 months for Count 3 to be served consecutively to the sentences for Counts 1, 2, and 4, and 300 months for Count 5 to be served consecutively to all other sentences. *Id.*

On May 3, 2012, Petitioner filed a timely notice of appeal, appealing his conviction and sentences. (Rec. Doc. 68). On May 10, 2013, the United States Court of Appeals for the Fifth Circuit affirmed the convictions, vacated the sentences for Counts 3 and 5, and remanded for resentencing. (Rec. Doc. 87). On November 13, 2013, this Court dismissed Count 3, and

resentenced Petitioner to 120 months for Count 5 to be served consecutively to Counts 1, 2, and 4 (Rec. Doc. 106).

Petitioner filed the instant § 2255 motion on November 4, 2014 (Rec. Doc. 107). The Government filed a response and memorandum in opposition on December 16, 2014 (Rec. Doc. 111), and Petitioner filed a reply on January 22, 2015. (Rec. Doc. 116).

## Law and Analysis

Petitioner asserts ten grounds for granting relief, all of which are claims of ineffective assistance of counsel. In *Strickland v. Washington*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioners to prove first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Deficient Performance is established by showing that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "Failure to meet either the deficient

performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel." *Id*. at 700. It is unnecessary for a court to address both components of an ineffective assistance of counsel claim if the petitioner makes an insufficient showing on one. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. "A fair assessment of [counsel's] performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. When making this evaluation, the court must maintain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. The petitioner must overcome this "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks omitted).

"A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992) (per curiam)). Within the context of the claim

7

being presented, a defendant must present "independent indicia of the likely merit of [his] allegations." *See United States v. Cavitt,* 550 F.3d 430, 442 (5th Cir. 2008). Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. *Reed*, 719 F.3d at 373 (quoting *United States v. Auten,* 632 F.2d 478, 480 (5th Cir. 1980)).

### A. Counsel Inadequately Challenged Facts in Search Warrant and Testimony by Government Witness (Grounds 1 & 2)

Petitioner asserts that his counsel was ineffective for failing to argue during the suppression hearing and in trial that Lt. Jewell's affidavit to obtain a search warrant contained a material falsehood, and for failing to call a witness and introduce evidence that would have been key to proving that the facts in question were false. The affidavit stated that, "[u]pon [the officer's] arrival, they met with [Petitioner's] girlfriend."[3] Petitioner claims that the video surveillance evidence shows that, contrary to the affidavit, the officers arrived at, and entered the residence prior to the arrival of Petitioner's girlfriend. (Rec. Doc. 107-2 at 19). However, Lt. Jewell's testimony at the suppression hearing is consistent with Petitioner's instant claim that when the officers arrived at

---

[3] *See* (Rec. Doc. 80 at 23) (Note that while this Court does not have a copy of the actual warrant, this citation is to Lt. Jewell reading from the warrant during the suppression hearing).

Petitioner's residence, they encountered four children, but not Petitioner's girlfriend. (Rec. Doc. 80 at 21).

At the suppression hearing, the Government questioned Lt. Jewell regarding the timing of the officer's arrival at the residence, as well as the discrepancy between the wording of the affidavit and his testimony. *Id*. at 23. Lt. Jewell explained that he used the particular wording in the affidavit for the search warrant simply to consolidate the information and save time, and that "the time when they met with [Petitioner's girlfriend] was really of no consequence ... it was just a choice of [] words at that point." *Id*. Petitioner's counsel also questioned Lt. Jewell, asking him if he and the other officers had entered the residence before Petitioner's girlfriend arrived, and if they began searching the residence. *Id*. at 55. Lt. Jewell answered that the officers performed a security sweep of the residence and then waited for Petitioner's girlfriend to arrive. *Id*.

In Petitioner's reply, he contends that the important issue was not only the discrepancy of facts between Lt. Jewell's affidavit and testimony, but more importantly, that the facts in his affidavit were never compared to Petitioner's surveillance video and witness testimony during the suppression hearing or trial. (Rec. Doc. 116 at 1-2). However, had Petitioner's counsel introduced the video evidence or called the witness to testify,

it would have only shown that Lt. Jewell's testimony was already consistent with Petitioner's evidence. As to why Lt. Jewell's testimony contradicted his affidavit, counsel for both sides questioned Lt. Jewell about the discrepancy. Declining to introduce evidence or witness testimony that speak to facts that are both uncontested and previously established, is not sufficient to overcome the strong deference given to Counsel's decisions of trial strategy.[4] Therefore, the record is conclusive that Petitioner's counsel was not deficient for his decision not to introduce redundant evidence and witness testimony, especially where such action is not been shown outcome determinative.

**B. Counsel Inadequately Investigated the Government's Confidential Informant (Ground 3)**

Petitioner asserts that his counsel was ineffective for failing to investigate the credibility or existence of the confidential informant. (Rec. Doc. 107-2 at 27). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91. "A particular decision not to

---

[4] *See Bobby v. Van Hook*, 558 U.S. 4, 11, 130 S. Ct. 13, 19, 175 L. Ed. 2d 255 (2009) (per curiam) (At some point, additional evidence can reasonably be expected to be only cumulative, and the search for it distractive from more important duties); *United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970), *cert. denied*, 401 U.S. 945 (1971) (Decisions as to whether or not to call certain witnesses to the stand are tactical determinations and even egregious [errors], in this respect do not provide a basis for post-conviction relief).

investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*.

In the instant case, counsel for Petitioner and the Government, as well as the Court, examined in depth the CI's history and credibility during the suppression hearing. Lt. Jewell testified that he had worked with this CI for about four years, a cooperation that resulted in 30 investigations, 19 successful prosecutions, and the convictions of 23 defendants. (Rec. Doc. 80 at 5-6). Lt. Jewell testified that this was the best CI he had ever worked with. *Id*.

On cross-examination, Petitioner's counsel successfully got Lt. Jewell to admit that while his affidavit stated that the CI had first-hand information about the cocaine in Petitioner's residence, in fact the CI never entered the house. *Id*. at 24-25. Petitioner's trial counsel also got Lt. Jewell to admit that he never mentioned the second individual, the CI's relative, in his affidavit. *Id*. Additionally, the Court extensively questioned Lt. Jewell about his working relationship with the CI. *Id*. at 42-46.

In Petitioner's reply, he clarifies that his contentions on this ground were in relation to counsel's failure to investigate the facts surrounding the CI's involvement prior to the suppression hearing. (Rec. Doc. 116 at 3). Essentially,

11

Petitioner claims that counsel should have filed a motion to reveal the identity of the CI, so that the Government's factual assertions regarding the CI's involvement and existence could be verified to Petitioner's satisfaction. This Court follows a three-factor test to determine whether the identity of an informant should be revealed: (1) the level of the informant's activity; (2) the helpfulness of the disclosure to the asserted defense; and (3) the Government's interest in nondisclosure. *United States v. De Los Santos,* 810 F.2d 1326, 1332 (5th Cir. 1987).

It is not necessary to determine whether the Court would have granted or denied a motion to reveal the CI's identity under the above test; rather, it is only necessary to determine if Petitioner's counsel acted reasonably in deciding not to file the motion. *Strickland*, 466 U.S. at 690. Here, the CI did not participate in the investigation of Petitioner, would likely be of no help to Petitioner's defense, and even though the CI is deceased, the Government maintains a high interest in protecting the identity of the CI's family. Petitioner's only interest in revealing the CI's identity is to "investigate if the CI or family member even existed." (Rec. Doc. 116 at 3). In other words, Petitioner would claim that Lt. Jewell and the Government created a make-believe CI, complete with a four-year history of

cooperation and assistance, in order to obtain a warrant in this investigation.

For Petitioner's counsel, whose decisions are afforded a heavy measure of deference, it was within the realm of professional judgment to avoid this motion, given the strong public policy and strict factors analysis that would work against Petitioner's rather weak motivation for revealing the information. Petitioner's counsel did not act unreasonably when he chose not to pursue a motion to reveal the CI's identity. Therefore, Petitioner's counsel did not fail to investigate effectively the relationship or existence of the CI.

### C. Appellate Counsel Failed to Challenge Government's Misstatement of Facts on Appeal (Ground 4)

Petitioner asserts that on appeal, the Government misstated the facts to indicate that officers detained Petitioner just <u>after</u> observing what they believed to be cocaine. (Rec. Doc. 107-2 at 29). If true, this would be contrary to the facts previously established by the Government and Petitioner, which were that officers detained Petitioner just <u>before</u> observing what they believed to be cocaine in plain view.[5] On appeal,

---

[5] *See* (Rec. Doc. 80 at 18) (At the suppression hearing, Lt. Jewell testified that the officers ordered Petitioner out of his car, and "informed him of what was taking place, placed him in handcuffs for everyone's safety, and [told] him that he was being detained pursuant to an investigation ... at some point within that time, [an officer] looks through the driver's side window ... and sees what he believes to be a large quantity of powder cocaine."); (Rec. Doc 81 at 114) (At trial, the arresting officer testified

Petitioner argued that "the district court erred by denying his motion to suppress because the officers lacked reasonable suspicion to stop his vehicle or probable cause to arrest him pending completion of the search warrants". *Riggins*, 524 F. App'x at 127. The court of appeals held that the officers did have reasonable suspicion to stop Petitioner's vehicle, based on this Court's factual finding that the information provided by the CI and corroborated by police surveillance was credible. Therefore, Petitioner's instant claim is that his appellate counsel was ineffective for failing to challenge the Government's misstatement of facts, which contributed to the appellate court's conclusion that the detention and search were constitutional.

However, even if we rely solely on Petitioner's characterization of his appellate counsel's performance and the Government's arguments during appeal, there is insufficient evidence to find prejudice. The appellate court received information from both parties, as well as the record of the proceedings below. The judgment from the court of appeals included a written opinion, in which the court relied on the version of facts found at trial.[6] Furthermore, the court

---

that he was initially handcuffed for everyone's safety, and informed that he was not under arrest.)

[6] "[The officers] observed [Petitioner] make movements between his driver's seat and the center console, so they ordered [Petitioner] out of the vehicle and placed him in handcuffs. Two officers looked through the driver's side

specifically stated the reasoning for their holding was this Court's finding that the CI's information was credible. *Id*. There is no evidence that the court relied on any alleged misstatement of facts by the Government during oral argument. The record is conclusive that Petitioner's counsel did not commit an error that, with a reasonable probability, affects the outcome of these proceedings. Therefore, Petitioner's Counsel could not be found ineffective on this ground.

### D. Appellate Counsel Conceded Facts Inconsistent with the Record Affecting the Determination of Probable Cause (Ground 5)

Petitioner claims that his appellate counsel was ineffective when she conceded during oral arguments that the black bag containing cocaine and found in Petitioner's vehicle contained white residue, which affected the appellate court's finding of probable cause. (Rec. Doc. 107-2 at 31). In its reply, the Government, quoting recordings from oral arguments, contends that Petitioner's counsel did not concede the presence of white powder on the black bag, but was merely uncertain as to its presence.[7]

---

window and observed what they believed to be a quantity of cocaine between the driver's seat and the center console." *United States v. Riggins*, 524 F. App'x 123, 125 (5th Cir. 2013); (Rec. Doc. 87 at 4).

[7] The Government quotes Petitioner's counsel as stating during oral arguments, "[The arresting officer] testified there was powder, that what he thought was white powder either on top of the bag, the plastic bag, I don't recall there being any on the black bag." Recording of Oral Argument at 34:00-35:00, 524 F. App'x 123, 125 (5th Cir. 2013); (Rec. Doc. 111 at 17).

Petitioner's argument is without merit, because the appellate court declined to address this issue. "[Petitioner's] assertion that the detention was an arrest without probable cause is waived because [Petitioner] failed to raise it in the pre-trial suppression proceedings. 524 F. App'x 123, 128 (*citing United States v. Pope,* 467 F.3d 912, 918-19 (5th Cir. 2006). Petitioner's appellate counsel could not have performed deficiently by failing to raise a previously waived argument, nor could such failure constitute prejudice.

### E. Trial Counsel Failed to Explain Sentencing Guidelines to Petitioner (Ground 6)

Petitioner claims that his trial counsel was ineffective for failing to inform him of the consequences of the Government filing a motion for sentencing enhancement under 21 U.S.C. §851. Rec. Doc. 107-2 at 33. Where a defendant enters a plea of not guilty, counsel's failure to inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). To show prejudice, "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). Therefore, the question here is whether there was a reasonable probability that, but for the actions of Petitioner's counsel, Petitioner would have received a lesser sentence than he did. *United States*

*v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004). This question has two parts. First, "whether [Petitioner] would have pleaded guilty if he knew of the [actual] criminal penalty he faced, and second, whether a guilty plea would have indeed reduced [Petitioner's] sentence." *Id.*

Petitioner claims in his affidavit that had he known he faced a minimum sentence of life, he would have pleaded guilty. (Rec. Doc. 107-2 at 64). However, the record does not indicate that the Government ever offered a plea deal to the Petitioner, and Petitioner has no constitutional right to plea bargain.[8] "Speculative and conclusory allegations are insufficient to raise a constitutional issue." *United States v. Hall*, 455 F.3d 508, 522 (5th Cir. 2006) (quoting *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993)). "[Petitioner] must do more than speculate about potential benefits that he was denied; he must provide concrete evidence that a favorable plea offer would have been available to him. *United States v. Ramos-Marrufo*, 2012 WL 5059087, at *5 (E.D. La. Oct. 18, 2012), *aff'd per curiam*, 471 F. App'x 297, 298 (5th Cir. 2012).

Petitioner does not show that a guilty plea would have reduced his sentence by way of plea-bargaining, and a guilty

---

[8] *See* Petitioner's Sworn Affidavit (Rec. Doc. 107-2 at 64) ("I would have never proceeded to trial and would have requested a plea agreement ... [I] would have pled guilty with or without a plea agreement."); *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977) (No constitutional right to a plea bargain).

plea alone would still subject Petitioner to the mandatory minimum of life imprisonment prescribed by statute. Therefore, the record is conclusive that Petitioner cannot show sufficient prejudice to indicate ineffective counsel.

**F. Trial Counsel was Ineffective for Failing to Object to the Court's Questioning of Witness (Ground 8)**

Petitioner claims that his trial counsel was ineffective for failing to object to the Court's questioning of a Government witness, and not requesting a mistrial for that conduct. Federal Rule of Evidence 614(b) allows the Court to "examine a witness regardless of who calls the witness." Fed. R. Evid. 614. Furthermore, "[a] federal district judge may comment on the evidence, question witnesses, bring out facts not yet adduced, and maintain the pace of the trial by interrupting or setting time limits on counsel." *United States v. Senegal*, 371 F. App'x 494, 506 (5th Cir. 2010) (internal citations omitted).

"To rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *United States v. Bermea,* 30 F.3d 1539, 1569 (5th Cir. 1994). The challenged remarks must be read in the "proper context by viewing the totality of the circumstances, considering factors such as the context of the remark, the

person to whom it is directed, and the presence of curative instructions," and, "[t]he totality of the circumstances must show that the trial judge's intervention was quantitatively and qualitatively substantial." *Senegal*, 371 F. App'x at 506 (internal citations omitted).

Petitioner challenges the Court's questioning of the Government's witness, Lt. Jewell. However, the record reflects that the Court's questions simply clarified facts already given during the witness' testimony. These included, for example, questions as to: where and in what condition the Government initially found photographed evidence, whether a gun was loaded when it was found, and whether the garage was attached to the main residence. (Rec. Doc. 81 at 77-78, 91). When taken in the context of counsel's extensive examination of Lt. Jewell, the Court's questioning was proper. Therefore, Petitioner cannot claim that his counsel was ineffective for failing to object to it.

### G. Trial Counsel was Ineffective for Failing to Object to the Government's Questioning of a Witness (Ground 9)

Petitioner claims that the Government's questions to their witness, Troy Williams, regarding his understanding of what would happen if he did not tell the truth, constituted improper vouching. "The prosecutor cannot make a personal assertion regarding the credibility of a Government witness that might

reasonably lead the jury to believe "that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." *United States v. Surtain*, 519 F. App'x 266, 291 (5th Cir. 2013) (quoting *United States v. McCann,* 613 F.3d 486, 495 (5th Cir.2010)). While eliciting this type of testimony may sometimes be inappropriate, it is not improper when the defense's strategy involved challenging the credibility of the witness who testified against him. *See*, *e.g.*, *United States v. Linares-Soberanis*, 464 F. App'x 334, 337 (5th Cir. 2012). Here, Petitioner's trial counsel attacked Williams's credibility in his opening statements, describing him as a "snitch", and as someone who would say what the Government wants him to say simply to get out of jail earlier. (Rec. Doc. 81 at 41-42). Therefore, Petitioner's counsel could not have been ineffective for failing to object, because the Government's question to the witness did not constitute improper vouching.

## H. Cumulative Impact of Trial Counsel's Errors is Grounds for Relief (Ground 10)

Petitioner argues that all of the above errors collectively, if not alone, constitute a valid ineffective assistance of counsel claim. (Rec. Doc. 107-2 at 47). However, "clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable

decisions and actions." *United States v. Hall*, 455 F.3d 508, 520-21 (5th Cir. 2006).[9] Therefore, there is no legally recognized basis for relief on this ground.

## Conclusion

For the foregoing reasons, Petitioner's 20 U.S.C. §2255 motion (Rec. Doc. 107) is **DENIED** without need of an evidentiary hearing.


New Orleans, Louisiana, this 22nd day of July, 2015.

UNITED STATES DISTRICT JUDGE

---

[9] *See also Miller v. Johnson,* 200 F.3d 274, 286 n. 6 (5th Cir. 2000) (stating that in the absence of specific demonstrated error, a defendant cannot, by definition, show that cumulative error of counsel deprived him of a fair trial); *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir. 1993) (stating that because certain alleged errors did not rise to constitutionally ineffective assistance of counsel, and because certain other claims were meritless, a petitioner had "presented nothing to cumulate").